USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/23/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

YOUNG-HWAN CHOI,

                Plaintiff,

      - against -

URBAN INTELLIGENCE INC.,

                Defendant.

**25 CV 9496 (VM)**

**DECISION AND ORDER**

**VICTOR MARRERO, United States District Judge.**

In this action, plaintiff Young-Hwan Choi ("Choi") brings claims against defendant Urban Intelligence Inc. ("UI"), alleging copyright infringement, false designation of origin, and unfair competition, and also seeks cancellation of UI's trademark registration. (See "Complaint" or "Compl.," Dkt. No. 1.) UI now moves to dismiss Choi's claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and Rule 8(a)(2). (See "MTD," Dkt. Nos. 27-28.) For the reasons set forth below, UI's motion to dismiss is **GRANTED**.

## I.    BACKGROUND[1]

In August 2009, the New York City Department of Buildings and the American Institute of Architects New York Chapter began accepting entries to the urbanSHED International Design

---

[1] Except as otherwise noted, the following background derives from Choi's Complaint. (See Dkt. No. 1.)

1

Competition (the "Competition"), seeking proposals for innovative scaffolding designs. (See Compl. ¶¶ 28, 32.) Choi submitted his presentation to the contest jury in September 2009, showcasing what he named the "Urban Umbrella Design" (the "Design"), which featured white scaffolding with transparent roofing and arch-like bracing to support higher clearance, enabling enhanced storefront visibility. (See id. ¶¶ 9, 31.) After Choi was selected as a Competition finalist in October 2009, two members of the architecture and engineering firm Agencie Group ("Agencie") provided technical expertise to Choi to ensure the Design met safety standards. (Id. ¶ 36.) Choi was announced as the winner of the Competition in December 2009. (See id. ¶ 37.)

Choi used Competition prize money to develop a prototype of his Design, which was later constructed in downtown Manhattan and unveiled in December 2011. (See id. ¶¶ 44, 45.) After attempting to secure additional funding, Choi, living on the West Coast, "informed Agencie to keep him posted if anyone ever expressed any interest in commercializing" the Design. (Id. ¶ 52.) Choi asserts that he expected to be consulted and compensated and that his "rights" would be properly licensed if the Design was ever further developed. (Id.)

In his Complaint, Choi alleges that his Design "has become a mainstay of New York City architecture" and that UI - a business that manufactures and installs scaffolding in the city – has taken "full credit," "reaped the full rewards," and "built an entire brand on the back" of his Design. (Id. ¶¶ 56-57.) Choi contends that "UI has made great efforts to protect intellectual property rights it does not own," reflected in a trademark registration for the "Urban Umbrella" mark, bearing U.S. registration number 7,864,358, which UI obtained on July 15, 2025. (Id. ¶¶ 60, 61.)

On July 21, 2025, the U.S. Copyright Office issued Choi a copyright registration (the "Copyright") for his Design, including the scaffolding arch shapes and integrated lighting, bearing registration number VAU001558875. (See id. ¶ 54; U.S. Copyright Office Public Records System, Copyright No. VAU001558875.) The record includes a note stating that the "[r]egistration does not extend to any useful article depicted" and "extends to deposited technical drawing with text only." (U.S. Copyright Office Public Records System, Copyright No. VAU001558875.)

Choi alleges four causes of action: (1) copyright infringement in violation of 17 U.S.C. §§ 101, *et seq*. (see Compl. ¶¶ 71-78); (2) false designation of origin in violation

3

of 15 U.S.C. § 1125(a) (see id. ¶¶ 79-86); (3) unfair competition under New York State Law and Common Law (see id. ¶¶ 87-94); and (4) cancellation of U.S. Trademark Reg. No. 7,864,358 pursuant to 15 U.S.C. §§ 1064 and 1119 (see id. ¶¶ 95-104).

After the parties exchanged pre-motion letters, on February 27, 2026, UI filed its motion to dismiss, supported by a memorandum of law. (See MTD.) On March 13, 2026, Choi filed an opposition. (See "Opp'n," Dkt. No. 28.) On March 20, 2026, UI filed a reply (see Dkt. No. 29), followed by a letter motion for leave to file an amended reply on March 21, 2026 (see Dkt. No. 30), and an amended reply on March 24, 2026 (see "Reply," Dkt. No. 33).

## II. **LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). When ruling on a motion to

dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. See Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). In reviewing a Rule 12(b)(6) motion, a district court may also consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). In particular, the Court may take judicial notice of official records of the United States Copyright Office and the United States Patent and Trademark Office. See Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005); Telebrands Corp. v. Del Labs., Inc., 719 F. Supp. 2d 283, 287 n. 3 (S.D.N.Y. 2010).

Pursuant to Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8 does not require "detailed factual allegations," "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a

cause of action will not do." Ashcroft, 556 U.S. at 677-78 (internal quotation marks and citation omitted).

### III. DISCUSSION

A.    COUNT I: COPYRIGHT INFRINGEMENT

In support of his copyright infringement claim, Choi alleges that UI "deliberately and willfully infringed Choi's copyrights in the . . . Design by advertising, and offering for development and purchase, scaffolding utilizing the . . . Design without Choi's permission in violation of 17 U.S.C. § 106." (Compl. ¶ 77.)

"To prevail on a claim of copyright infringement, the plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant." Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 108-09 (2d Cir. 2001); see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). Under the Copyright Act, a certificate of a registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c). Registrations made more than five years after first publication, however, are not without value; instead, the "evidentiary weight to be accorded the certificate" falls

"within the discretion of the court." Id. Choi received his copyright registration for his Design on July 21, 2025, more than fifteen years after he first submitted it to the Competition. (See Compl. ¶¶ 28-32; U.S. Copyright Office Public Records System, Copyright No. VAU001558875.) Accordingly, the Court does not apply the statutory presumption of validity.

While the Court finds some of the allegations in Choi's Complaint ambiguous, the pleadings and Choi's briefing support the contention that Choi asserts his claim on the basis that UI's scaffolding infringes his copyrights, not that UI has reproduced or distributed the drawings depicting his Design. While Choi pleads that UI's website "features an image of the Urban Umbrella Design trade dress" - "white in color" with "transparent roofing," and "arch-like bracing" – he alleges that UI "infringed Choi's copyrights in the . . . Design by advertising, and offering for development and purchase, *scaffolding* utilizing" his Design. (Compl. ¶¶ 58-59, 77; see Opp'n at 11 ("[T]he Complaint alleges that both Choi's copyrighted . . . Design and UI's *structure* share the same distinctive aesthetic features (emphasis added)).)[2]

---

[2] While Choi contends "UI copied the Design itself," the Court interprets that statement as Choi arguing that UI's scaffolding - the alleged infringing item at issue - is more than "substantially similar" to Choi's

UI argues that Choi's technical drawing does not give him derivative copyrights to the useful article – here, the scaffolding - noting that Choi's Copyright registration stipulates that it "does not extend to any useful article depicted" but to a "deposited technical drawing with text only." (MTD at 8-9; Reply at 3.) In opposition, Choi primarily contends: (1) that "[e]ven if the overall design depicted in the deposited work has practical utility, the law still protects the work's expressive, aesthetic features," and that, here, UI has infringed "specific expressive design elements reflected in the deposited work, not of the functional concept of scaffolding"; and (2) the analysis of that issue requires a merits-based inquiry not suited for resolution on a motion to dismiss. (See Opp'n at 13.)

As an initial matter, the Court is unpersuaded by Choi's assertions that the determination of whether "the deposited work contains copyright-protectable artistic features and elements otherwise embodied in a work with utilitarian aspects" or whether UI's "adaptation of the registered work copies only utilitarian aspects" is a question unsuitable for

Design. (Opp'n at 11 n. 9.) As Choi contends, "UI market[s] the *structure*" as winning the Competition and thus the "*accused work* is not merely 'substantially similar' to Choi's work - it is the winning design itself." (Id. at 11 (emphases added).) According to Choi, the "accused work" – here, the "structure" or scaffolding – copies more than merely a "substantial portion" of his Design. (Id. at 11 n.9.)

8

resolution at this stage of the litigation. (Id.) Numerous courts in this District have analyzed and answered this same question when ruling on a motion to dismiss. See, e.g., Jovani Fashion, Ltd. v. Cinderella Divine, Inc., 808 F. Supp. 2d 542, 549 (S.D.N.Y. 2011), aff'd sub nom. Jovani Fashion, Ltd. v. Fiesta Fashions, 500 F. App'x 42 (2d Cir. 2012) (assessing the separability of the allegedly protected design elements from the useful article at issue); Metro Light & Power LLC v. Furnlite, Inc., No. 24-CV-3713, 2026 WL 686511, at *2 (S.D.N.Y. Mar. 11, 2026) (same).

Addressing Choi's substantive argument, the Copyright Act applies to "original works of authorship fixed in any tangible medium of expression" including "pictorial, graphic, and sculptural works." 17 U.S.C. § 102. Copyright protection extends to the "design of a useful article," however, only if those features "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." Id. §§ 101, 102(a).[3] A "useful article," in turn, is one "having an intrinsic utilitarian function that

---

[3] "The copyright law does not protect useful articles. . . . But it does protect two- or three-dimensional artistic features that have been incorporated into the design of a useful article, if those features are separable from the article." U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 906.10.

is not merely to portray the appearance of the article or to convey information." Id. § 101.

Choi's claim for copyright infringement is governed by the Supreme Court's opinion in Star Athletica, L.L.C. v. Varsity Brands, Inc., 580 U.S. 405 (2017). There, the Supreme Court clarified that "a feature of the design of a useful article is eligible for copyright if, when identified and imagined apart from the useful article, it would qualify as a pictorial, graphic, or sculptural work either on its own or when fixed in some other tangible medium." Id. at 417. Broken down, this "separability" analysis has two requirements: "separate identification" and "independent existence." Id. at 414. Under the first requirement, which "is not onerous," "[t]he decisionmaker need only be able to look at the useful article and spot some two- or three-dimensional element that appears to have pictorial, graphic, or sculptural qualities." Id.

Under the second requirement, the "decisionmaker must determine that the separately identified feature has the capacity to exist apart from the utilitarian aspects of the article." Id. "In other words, the feature must be able to exist as its own pictorial, graphic, or sculptural work as defined in § 101 once it is imagined apart from the useful

article." Id. "[T]o qualify as a pictorial, graphic, or sculptural work on its own, the feature cannot itself be a useful article or [a]n article that is normally a part of a useful article (which is itself considered a useful article)." Id. at 415 (internal quotation marks omitted).

Here, Choi alleges "infringement of specific expressive design elements reflected in the deposited work" – including the arch shapes, integrated lighting, and transparent roofing. (Compl. ¶¶ 9, 54; Opp'n at 13.) Those allegations sufficiently pass the first prong of the Star Athletica test: looking at the useful article – UI's scaffolding – the Court can identify alleged Design features "having pictorial, graphic, or sculptural qualities." 580 U.S. at 417. Nevertheless, as to the second prong of the test, the Court is unable to say that those features have "the capacity to exist apart from the utilitarian aspects of the article." Id. at 414.

In Star Athletica, the Supreme Court found that the elements at issue did have the capacity to stand alone, explaining that "removing the surface decorations" – including "colors, shapes, stripes, and chevrons" – "from uniforms and applying them in another medium would not replicate the uniform itself." Id. at 414. Comparing the

decorations to "a design etched or painted on the surface of a guitar," the court reasoned that if the "entire design [wa]s imaginatively removed from the guitar's surface and placed on an album cover, it would still resemble the shape of a guitar." Id. at 418. In essence, "the cover does not 'replicate' the guitar as a useful article." Id.

Here, the Court cannot say the same. The specific expressive elements reflected in Choi's Design cannot "exist apart from the utilitarian aspects of the article." Id. at 414. Simply put, arch shapes, integrated lighting, and transparent roofing features cannot be "identified separately from" the useful aspects of the scaffolding structure. 17 U.S.C. §§ 101, 102(a). Compare Metro Light, 2026 WL 686511, at *1 (finding "bezel face plate that is designed to be installed flush with the surface of the furniture" was not "a work of art separate from" electrical and USB outlets), with Crye Precision LLC v. Concealed Carrier, LLC, 749 F. Supp. 3d 308, 325 (E.D.N.Y. 2024) (finding that if the camouflage pattern at issue was "imaginatively removed from tactical gear and applied — for example, on a painter's canvas, — the pattern could still qualify as a two-dimensional work of art" (internal quotation marks and citation omitted)).

Accordingly, the Court dismisses Choi's copyright infringement claim.

B.    COUNT II: FALSE DESIGNATION OF ORIGIN

In Count II, Choi contends that UI violated Section 43(a) of the Lanham Act by "us[ing], promot[ing], and/or offer[ing] for sale goods and services bearing or incorporating Choi's distinctive 'Urban Umbrella' name and Urban Umbrella Design in a manner likely to cause confusion, mistake, or deception among consumers as to the affiliation, connection, or association of UI and its infringing works with Choi, or as to the origin, sponsorship or approval of UI's goods and services." (Compl. ¶ 81.) Choi argues that he has protectable rights in both his "word mark" and the Design's trade dress. (Id. ¶¶ 31, 54; Opp'n at 17.)

To assert a claim under Section 43(a) of the Lanham Act, a plaintiff must allege that "(1) it has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale . . . or advertising of goods or services, (5) without the plaintiff's consent." Dual Groupe, LLC v. Gans-Mex LLC, 932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013) (quoting 1-800 Contacts, Inc. v. WhenU.Com, Inc., 414 F.3d 400, 407 (2d Cir. 2005)). The plaintiff must also allege that the

defendant's use of the mark is likely to cause confusion "as to the affiliation, connection, or association of [defendant] with [plaintiff], or as to the origin, sponsorship, or approval of [the defendant's] goods, services or commercial activities by [plaintiff]." 1-800 Contacts, 414 F.3d at 407.

"Preliminary to making this showing, however, a plaintiff must demonstrate its own right to use the mark or dress in question." ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 154 (2d Cir. 2007); see also Pulse Creations, Inc. v. Vesture Grp., Inc., 154 F. Supp. 3d 48, 56 (S.D.N.Y. 2015) ("[A] plaintiff must prove, first, that the mark is entitled to protection[.]" (citation omitted)); Merck & Co. v. Mediplan Health Consulting, Inc., 425 F. Supp. 2d 402, 410-11 (S.D.N.Y. 2006) ("To prevail on a . . . false designation of origin [claim] under § 43(a) of the Lanham Act . . . a plaintiff must first show that it owns a valid mark entitled to protection under the statute that the defendant used in commerce[.]").

To allege ownership of an unregistered trademark, a plaintiff must "assert[] that he made prior use of the trademark," which "means that the plaintiff claims to have made the first use of the mark to identify his goods or service and continues to use the mark commercially." Dual

Groupe, 932 F. Supp. 2d at 573; see also Talk to Me Products, Inc. v. Larami Corp., 804 F. Supp. 555, 559 (S.D.N.Y. 1992) ("The exclusive right to a distinctive mark belongs to the one who first uses it in connection with a particular line of business.").

Choi contends that he plausibly alleges commercial exploitation efforts that are "sufficient to support protectable rights." (Opp'n at 20.) In his Complaint, Choi pleads that he used the term "Urban Umbrella" to identify his Design, promoted it throughout the Competition and the ensuing publicity, and – after developing a prototype with New York City - pursued opportunities to commercialize the concept by "attempt[ing] to obtain funding to further develop the Urban Umbrella Design." (Compl. ¶¶ 32-34, 37-39, 40-44, 50-52.) Choi further asserts that while he "attended many fundraising meetings for the . . . Design, he soon became busy with his new life on the other side of the country" and "informed Agencie to keep him posted if anyone ever expressed any interest in commercializing the . . . Design." (Id. ¶ 52.) Choi contends that "based on his discussions with Agencie," he was "was led to believe that the . . . Design never received funding, and was never fully developed or licensed." (Id. ¶¶ 52-53.) Choi also alleges that in 2023,

the member of Agencie who had provided him technical expertise after Choi was selected as a Competition finalist, "informed Choi that the project had not been profitable for him personally" and "did not disclose to Choi any transactions related to the project." (Id. ¶¶ 68-69.)

Here, the Court finds that those allegations are insufficient to support ownership of the mark at issue. "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. "[A] mark shall be deemed to be in use in commerce . . . on goods when . . . (A) it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto . . . and (B) the goods are sold or transported in commerce." Id. Choi's alleged promotion of the Design and attempts to raise the funding necessary to commercialize it fall short of the requirements set forth in the statute's plain language. Accordingly, the Court cannot say that he has protectable rights in either the Design's word mark or trade dress. See, e.g., Threeline Imports, Inc. v. Vernikov, 239 F. Supp. 3d 542, 558 (E.D.N.Y. 2017) (finding that "to establish 'use in commerce' . . . the [party] must show that they were using the mark in commerce" and "must

demonstrate that [the] use of the mark has been deliberate and continuous, not sporadic, casual or transitory" (internal quotation marks and citations omitted)); Gameologist Grp., LLC v. Sci. Games Int'l, Inc., 838 F. Supp. 2d 141, 154-55 (S.D.N.Y. 2011) (finding that plaintiff's use of the mark through sales of its game, posting its game online, and advertising, marketing, and promotion of the mark did "not amount to 'use in commerce' sufficient to entitle the plaintiff's mark to protection").

The Court is also not persuaded by Choi's argument that whether his conduct constitutes "use in commerce" for purposes of trademark ownership is an issue unsuitable for resolution upon a motion to dismiss. (Opp'n at 19.) Nothing in Choi's pleadings raises a factual issue rendering the Court's findings improper at this stage of the litigation. And similarly, whether UI's use of the Design, as Choi contends, can inure to his benefit under the Lanham Act's "related companies" doctrine also presents no question of fact. (Opp'n at 20-21.) While it is true that "[w]here a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for

17

registration," Choi pleads nothing in his Complaint to support this argument. 15 U.S.C. § 1055.

Therefore, the Court finds that Choi has not stated a claim under Section 43(a) of the Lanham Act and dismisses Count II accordingly.

C.    COUNT III: UNFAIR COMPETITION

To support his unfair competition claim, Choi contends that UI's alleged "misappropriation of [his] intellectual copyright rights without authorization has given UI an unfair competitive advantage because UI has misappropriated the results of the labor, skill, and expenditures of Choi to achieve an unfair competitive commercial advantage within the architectural market." (Compl. ¶ 90.)

The elements of an unfair competition claim in New York largely mirror those under Section 43(a) of the Lanham Act. See, e.g., Kaplan, Inc. v. Yun, 16 F. Supp. 3d 341, 351 (S.D.N.Y. 2014) ("The elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims." (citation omitted)). However, a party asserting a claim for unfair competition under New York law must also allege bad faith on the part of the defendant. See, e.g., Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 485 (2d Cir. 2005).

Here, Choi's arguments in support of his unfair competition claim parallel those made in support of his Lanham Act claim. Because the Court finds that Choi has not stated a claim under Section 43(a), the Court also finds that Choi has not adequately pleaded his New York unfair competition claim. Accordingly, Count III of the Complaint is dismissed.

D.    COUNT IV: TRADEMARK REGISTRATION CANCELLATION

Finally, the Court dismisses Count IV for lack of jurisdiction. UI obtained from the USPTO a trademark registration for the "Urban Umbrella" mark on July 15, 2025. (Compl. ¶ 61.) In Count IV, Choi alleges that this mark "incorporates Choi's coined term for scaffolding products" in violation Lanham Act Sections 2(a) and 2(d), thereby entitling Choi to cancellation of UI's registration. (Id. ¶¶ 97, 100.)

Although Section 1119 provides that courts "may determine the right to registration . . . [or] order the cancelation of registrations," the statute does not permit a cancellation claim as an independent cause of action. 15 U.S.C. § 1119. See, e.g., Nike, Inc. v. Already, LLC, 663 F.3d 89, 98 (2d Cir. 2011), aff'd, 568 U.S. 85, 133 S. Ct. 721 (2013) ("The limiting phrase '[i]n any action involving a registered mark' plainly narrows the circumstances in which

19

cancellation may be sought - namely, in connection with 'a properly instituted and otherwise jurisdictionally supportable action involving a registered mark.'" (citation omitted)); George & Co., LLC v. Spin Master Corp., No. 22-126-CV, 2023 WL 6053005, at *1 (2d Cir. Sept. 18, 2023) ("A request for trademark cancellation under [Section] 1119 does not provide an independent basis for jurisdiction[.]"); Surrey Propco LLC v. Denihan Ownership Co., LLC, No. 22-1763-CV, 2023 WL 4553551, at *3 (2d Cir. July 17, 2023) (affirming the district court's holding that plaintiff failed to state a claim for trademark infringement under the Lanham Act and finding that "in the absence of a valid claim for trademark infringement, the district court properly dismissed [plaintiff's] trademark cancellation claim for lack of subject matter jurisdiction"). Accordingly, having dismissed Choi's Section 43(a) claim, the Court finds that Count IV cannot stand on its own.

## IV.  ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 27) filed by defendant Urban Intelligence Inc. to dismiss the Complaint (Dkt. No. 1) of plaintiff Young-Hwan Choi is **GRANTED**.

The Clerk of Court is respectfully requested to terminate the motion at docket No. 27.

**SO ORDERED.**

Dated:    23 June 2026
            New York, New York

Victor Marrero
U.S.D.J.